**CHAMPION PAPER AND FIBRE CO., Appellant, v. GLANDER, Appellee.**

Board of Tax Appeals.

No. 13918. Decided October 27, 1948.

Francis T. Bartlett, Charles C. Benedict, Cincinnati, for appellant.

Hugh S. Jenkins, Atty. Genl., Daronne R. Tate, Asst. Atty. Genl., Cincinnati, for appellee.

## ENTRY

This cause and matter came on to be considered by the Board of Tax Appeals upon an appeal filed herein under date of January 9, 1948, by the appellant above named, an Ohio corporation with its principal office and place of business at Hamilton, Ohio, from a final order of the tax commissioner under date of December 12, 1947, which, in some respects,. modified and as modified, confirmed increased tax assessments theretofore made on the appellant's intangible property for the tax years 1945 and 1946. The case was submitted to the Board upon said appeal, upon the transcript of the proceedings of the tax commissioner relating to the assessments. complained of, upon the evidence presented upon a hearing of the case before an examiner of the Board and upon the briefs of counsel for the parties in this case.

The errors assigned by the appellant in this appeal and. presented to the Board for its consideration and determination are:

(1). That the tax commissioner included in the assessments. complained of and as "other taxable intangibles" of the appellant certain Federal "excess profits postwar refund credits" which had accrued to the appellant under the provisions of Section 780 of the Internal Revenue Code with respect to excess profits taxes theretofore paid by the appellant under the corporations excess profits tax . law which was carried into the Internal Revenue Code as Sections 710 to 783, inclusive, F. C. A. Tit. 26, Subchapter E—Excess Profits taxes.

(2). That the tax commissioner assessed as "other taxable intangibles" (allocated entirely to this state) for the tax years here in question certain prepaid premiums or premium deposits, so-called, paid by the appellant to certain mutual insurance companies for insurance on its property which was located in part in the state of Ohio and in part in the states of North Carolina, Texas and Georgia, respectively; and which premium deposits the appellant in its intangible and personal property tax returns for said tax years had listed as prepaid items which it allocated in and out of the state according to the location of the property insured and the respective amounts of insurance thereon and premium paid therefor.

With respect to the first assignment of error it need only be said, as pointed out by this Board in its decision on this question in the case of the Chillicothe Paper Company v. Glander, Tax Commissioner, case No. 13981, that since any tax imposed by the tax commissioner on these excess profits post war refund credits under the assumed authority of §5328-1 GC and other related sections of the General Code would be directly proportional in amount with the amount of excess profits taxes theretofore paid by the appellant under the excess profits tax law, such taxes so imposed under the laws of this state would be a direct limitation upon the taxing power of the United States. And under the authority of the decision in the case of the Chillicothe Paper Company v. Glander, Tax Commissioner, above referred to, and of the decision of the Board in the earlier case of C. H. Gosiger Machine Co. v. Glander (No. 11530), 75 N. E. (2d), 728, we are constrained to hold that §5328-1 GC and other sections of the General Code relating to the taxation of intangible and personal property in this state cannot be so construed as to authorize the assessment of the postwar refund credits here in question. And in this respect the action of the tax commissioner herein complained of is hereby reversed.

With respect to the second assignment of error set out in this appeal, above noted, it appears that on and as of April 30, 1944 and April 30, 1945 (as of which dates appellant's intangible and personal property was assessed for the tax years 1945 and 1946, respectively) the appellant company had in force large amounts of fire, boiler explosion and other insurance on its property and business operations in its several plants in Ohio, North Carolina, Texas and Georgia; which insurance was effected by several insurance policies for varying terms which had been theretofore executed and delivered to the appellant by a number of Massachusetts mutual in-

surance companies upon the prepayment by the appellant to these insurance companies of premiums or premium deposits, so-called, in the several and respective amounts set out in said policies. On April 30, 1944, the unearned or unabsorbed portions of such prepaid premiums or premium deposits amounted in the aggregate to the sum of $523,229. In its intangible and personal property tax return for the tax year 1945 the appellant listed such unearned or unabsorbed portions of its prepaid premiums or premium deposits in Schedule 9 of the tax return as "prepaid items" and as "credits" as this latter term is defined in and by §5327 GC; and of the total amount of these items in the sum of $523,229, above stated, the appellant allocated to the state of Ohio for purposes of taxation the sum of $221,409, and thereby allocated out of the state and as property not taxable therein the balance of said items amounting to $301,820. This allocation of said items was made by the appellant under §5328-2 GC, which provides, among other things, that prepaid items, when used in business, shall be considered to arise out of business transacted in a state other than that in which the owner thereof resides "when the right acquired thereby relates exclusively to the business to be transacted in such other state, or to property used in such business". On and as of April 30, 1945, the unearned or unabsorbed portion of the prepaid premiums on these several insurance policies amounting in the aggregate to the sum of $482,573, which the appellant in its tax return for the year 1946 listed in Schedule 9 of said return in the category of prepaid items, and of which aggregate amount said taxpayer listed as taxable in Ohio the sum of $149,864, thereby allocating the balance of this aggregate sum outside of this state. This allocation was likewise made by the taxpayer under the assumed authority of the provisions of §5328-2 GC, above noted.

Although, apparently, the tax commissioner in previous years assessed prepaid insurance premiums of the kind herein question as prepaid items on the several annual tax returns filed by the appellant company and according to the allocations made in such tax returns, said officer on audit of the appellant's 1945 and 1946 tax returns eliminated the prepaid insurance premiums here in question from the category of "prepaid items" in Schedule 9, and as to each of said tax years assessed the aggregate amounts of these items as "other taxable intangibles" within the definitive provisions of §5327-1 GC. And since there is no provision in §5328-2 GC, authorizing the assessment of intangible property classified as "other

taxable intangibles" in any state other than that in which the owner thereof is a legal resident, the tax commissioner on such audits so made allocated the aggregate amount of such items wholly to the state of Ohio for purposes of taxation. This action of the tax commissioner resulted in increased intangible property assessments against the appellant for the tax years in question; which assessments were later confirmed by the tax commissioner in the final order herein complained of.

The question presented on this appeal is whether these prepaid insurance premiums—or premium deposits as they are sometimes called in the insurance policies—, are "prepaid items" as this term is used in §5327 GC, and taxable in this state on an allocation thereof in the manner provided by §5328-2 GC, or are "other taxable intangibles" within the purview of §5327-1 GC, and are taxable to the whole amount thereof in this state. The term "prepaid items" is not defined in §5327 GC or in any other section of the General Code. However, as to this, it appears that the tax department in the administration of the applicable tax laws of the state is endeavoring to give effect to a definition of the term "prepaid items" as the same appears in an opinion of the attorney general under date of December 6, 1935. O. A. G. 1935, Vol. 3, page 1599. In this opinion it was held:

"The term 'prepaid items' as the same is used in §5327 GC, defining the term 'credits' for purposes of taxation, includes all items of prepayment made by the taxpayer in the conduct of his business by which rights accrue to the taxpayer over the period of time covered by such prepayment, which, by recognized and proper accounting practice, may be set up as prepaid items as an asset of the taxpayer, and which on tax listing day have an actual value in money amortized as of said date."

Conformable to the view expressed by the attorney general in this opinion and to recognized accounting practices, it is conceded that prepaid insurance premiums generally are properly classed as prepaid items for purposes of taxation in this state. However, it is contended by the tax commissioner in this case that the prepaid insurance premiums here in question are not prepaid items as this term is used in §5327 GC, but that the same are prepaid premium deposits—whatever that term may mean—, as distinguished from prepaid insur-

ance premiums as such. In this situation it is pertinent to note the applicable provisions of Sections 81 and 83 of Chapter 175 of the Annotated Laws of the Commonwealth of Massachusetts, under the laws of which Commonwealth the mutual insurance companies are organized and operating. These statutory provisions are as follows:

**SECTION 81**—"Mutual fire companies, except as provided in the following section, shall charge and collect upon their policies a full mutual premium in cash or, except as provided in Section 73, in notes absolutely payable. Any such company shall in its by-laws and policies fix the contingent mutual liabilities of its members for the payment of losses and expenses not provided for by its cash funds, which liability shall not be less than an amount equal to and in addition to the cash premium written in his policy. The total amount of the liability of the policy holder shall be plainly and legibly stated upon the file-back of each policy, Whenever any reduction is made in the contingent of the liability of members, such reduction shall apply proportionately to all policies in force."

**SECTION 83**—"If a mutual fire company is not possessed of assets above its unearned premiums sufficient for the payment of incurred losses and expenses, it shall make an assessment upon its members liable to assessments therefor, in proportion to their several liabilities, for the amount needed to pay such losses and expenses."

In this connection it is likewise pertinent to note the provisions of §§9607-7 and 9607-19 GC of this state relating to mutual fire insurance companies.

**SEC. 9607-7**—"A domestic mutual company may, in its articles of incorporation, or in its by-laws, provide for a cash premium payable in advance and a contingent liability of the policy-holder of not less than one, nor more than ten times the cash premium in each policy, and may further provide for policies not exceeding on any one risk five per cent of the company's assets, to be issued for cash premiums payable in advance without contingent liability of the policy-holder."

**SEC. 9607-19**—"A foreign mutual company shall be admitted to transact the kinds of insurance authorized by its charter or articles of incorporation to the extent and with the privileges and powers permitted by law to domestic mutual companies

when such company shall be solvent and shall transact its business according to the requirements of law applicable to like domestic mutual insurance companies."

Obviously the insurance policies issued to the appellant by the mutual insurance companies above referred to and the terms therein employed are to be construed in the light of the applicable statutory provisions above noted; and in this view, no reason is seen for ascribing to the insurance premiums paid in by the appellant on such policies any different character, with respect to the question at hand, than that ascribed to prepaid insurance premiums generally. And in this connection it is noted that there is no evidence in the record of this case to show affirmatively that the insurance premiums paid in by the appellant and by other policy holders of said mutual insurance companies were substantially in excess of the cost of such insurance to the insurance companies. As to this it is further noted, however, that although in and by the insurance policies issued to the appellant company the insurance companies had the right to make assessments, if need be, against the 'appellant within the limitations of the statutory provisions above noted, it does not appear that any assessments were ever made against the appellant on its contingent liabilities under these policies or any of the same.

Although the question here presented is inherently one of some difficulty, we are of the view that the prepaid insurance premiums here in question were properly assessable as prepaid items and not as other taxable intangibles, within the purview of the statutes of this state relating to the taxation of intangible and personal property. And in this respect the order of the tax commissioner complained of in this appeal is reversed. And inasmuch as there is nothing in the evidence in this case to show that the amortized valuations of such prepaid insurance premiums for the tax years 1945 and 1946 were not that computed and determined by the appellant company in its tax returns for said years, it is by the Board of Tax Appeals further considered and ordered that this case be remanded to the tax commissioner with instructions here made that the tax commissioner assess such prepaid insurance premiums as prepaid items in accordance with appellant's tax returns for said years.

BOARD OF TAX APPEALS