159 N.J. Super. 472 (1978)
388 A.2d 630
CARMELO PANETTIERI, PLAINTIFF-RESPONDENT,
v.
C.V. HILL REFRIGERATION, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued February 14, 1978.
Decided May 10, 1978.
*477 Before Judges ALLCORN, MORGAN and HORN.
Mr. Michael J. Nizolek argued the cause for appellant (Messrs. Backes and Backes, attorneys; Mr. James A. Waldron, of counsel).
Ms. Marcia A. Memrino, Deputy Attorney General, argued the cause for respondent (Mr. John Degnan, Attorney General of New Jersey, attorney; Mr. William F. Hyland, former Attorney General of New Jersey and Ms. Erminie L. Conley, Deputy Attorney General, of counsel).
The opinion of the court was delivered by MORGAN, J.A.D.
This employment discrimination case raises several questions of novel import concerning N.J.S.A. 10:5-4.1, the amendment to the Law Against Discrimination (N.J.S.A. 10:5-1 et seq.), effective August 1, 1972, which proscribes discrimination and discriminatory employment practices against the physically handicapped. The provision, central to this case, reads as follows:
All of the provisions of the act to which this act is a supplement shall be construed to prohibit any unlawful discrimination against any person because of the physical handicap of such person or any unlawful employment practice against such person, unless the nature and extent of the handicap reasonably precludes the performance of the particular employment. *478 Reference herein will also be made to another provision of the Law Against Discrimination, N.J.S.A. 10:5-2.1, which, as pertinent, reads:
Nothing contained in this act or in the act to which this is a supplement shall be construed * * * to prevent the termination or change of the employment of any person who in the opinion of his employer, reasonably arrived at, is unable to perform adequately his duties, nor to preclude discrimination among individuals on the basis of competence, performance, conduct or any other reasonable standard, * * *.
The present controversy had its inception with the refusal of the employer, C.V. Hill Refrigeration (hereinafter appellant), to rehire complainant Carmelo Panettieri, a former employee, after his recovery from a heart attack. Following a five-day hearing before the Division of Civil Rights, appellant was found to have been in violation of N.J.S.A. 10:5-4.1 and was ordered to reinstate Panettieri to his job with back pay, mandatory overtime, expenses, interest and humiliation damages. Appellant's motion to reopen the hearing based upon alleged fraud committed during the hearings and newly discovered evidence was denied. This appeal ensued.
In his quest for reinstatement following his recovery from a heart attack, Panettieri first met with Anthony Minieri, Hill's employment manager, to whom he gave a certificate of medical clearance from Dr. Jaferi, his treating physician. He was then referred to the infirmary where he spoke to Dr. John Flood, the plant physician. Although Dr. Flood failed to administer even a cursory physical examination, confining himself to questioning Panettieri as to how he felt and what medication he was using, he issued, on a company form, his recommendation of "no prolonged, persistent physical jobs like ones that require constant motion. No lifting, pulling or pushing loads above 25 pounds." According to Flood, this recommendation was based upon his experience, Dr. Jaferi's certificate and the recommendations *479 previously made by his predecessor in similar cases. He admitted unfamiliarity with Panettieri's job classification and with the nature of the job he had previously been doing. Indeed, the last time he had toured the plant was some ten years before his encounter with Panettieri.
Returning to Minieri with Flood's recommended limitations on the work he could do, Panettieri was told that there was no more work for him at the plant, presumably because of Flood's limitations and because Minieri was required to abide by those recommendations.
In his further attempt at reinstatement Panettieri consulted with Leonard Bik, Director of Industrial Relations. He told Bik that he felt well and had the certificate of his treating physician to prove it. He also advised Bik that Flood's recommended limitations on the work he would be permitted to do were not arrived at after a physical examination. According to Panettieri, Bik told him that Dr. Flood's recommendations controlled, the company could not rehire him, and at the hearing Bik confirmed that his decision not to rehire Panettieri was based solely upon the certificate issued by Dr. Flood.
Other evidence which figured in the hearing examiner's findings included testimony from Arturo Cianfano, one of Panettieri's coemployees who worked in the same job classification. He was rehired after a heart attack on February 28, 1972 and has since been working at the job without difficulty. His description of the job conflicted to some degree with the company's official job description as entailing considerable and sustained physical effort; Cianfano described his and Panettieri's work to be "a normal job that any one can handle."
Joseph Scarlata, another coemployee in Panettieri's department, confirmed Cianfano's view of the job as entailing less physical demand than indicated on the official job description. Coemployees would routinely help each other when necessary, and the heaviest piece of equipment *480 he ever had to handle alone was an empty box weighing approximately 40 lbs.
Because of the apparent dispute concerning the physical demands of the job at Department 19 to which Panettieri sought return, the hearing examiner made a visit to the plant in the presence of counsel for both sides prior to his making his findings and recommendations. He summarized his plant visit as follows:
Finally, after personally inspecting and observing the operations of Department 19 in the presence of counsel for all parties I find that the job description and physical demand recited in Exhibit R-1 is exaggerated. I cannot conclude from my inspection and observations, as stated in Exhibit R-1 that the physical effort required on the job in assembling parts at various stations on the line is "sustained" nor that the worker is "frequently" in difficult position; nor do I find that the job consists of "handling large and bulky parts." Rather, I find that the job operation which I observed is neither heavy or light. I further find, based upon my inspection and observations, that the weights assigned to objects recited in Exhibit R-15 give a distorted picture of the physical effort required on the job. With the use of motorized hoists and other mechanical aids, including skids and stake trucks, the heavier objects can be pushed or lifted without difficulty, or in any event, with the assistance of a co-worker.
Of critical importance, however, was the testimony of Dr. Jaferi, a board-eligible cardiologist, and the doctor who treated Panettieri's condition. There is no question that as a result of the uneventful progress of Panettieri's recovery, his lack of symptoms, the results of a cardiogram and blood-enzyme tests, he concluded that Panettieri was well able to return to his former employment. He found no complications, no signs of a weakening heart and no extensive heart damage. His conclusions in this regard were confirmed by a later stress test administered by a Dr. John Wood, a cardiologist, retained by appellant Hill to perform the test after the Division had issued its finding of probable cause. Although, significantly, Dr. Wood was not called by appellant as its witness, the report of his test was admitted *481 into evidence. In commenting thereon Jaferi testified that the stress test, which measures the oxygen consumption of a person undergoing physical stress, provides "one of the methods of determining one's physical capacity," including "lifting, pushing and pulling."
The results of the test showed "no definitive evidence of ischemia in response to the effort described." Dr. Jaferi viewed the test results as being primarily normal, and he thought Panettieri "did very well on that." No abnormalities under stress were disclosed.
In his extensive and painstaking findings, the hearing examiner, Julius Wildstein, properly concluded that Panettieri established a prima facie case of discrimination based upon his disability. Both parties agreed that disability resulting from a heart attack is a disability within the meaning of N.J.S.A. 10:5-4.1. Panettieri was technically qualified for his former job and the employer never suggested otherwise. And the refusal to hire him was admittedly based upon the disability resulting from his heart attack.
The hearing examiner thereupon concluded that following establishment of a prima facie case of unlawful discrimination, the burden of proof shifts to the employer to demonstrate that "the nature and extent of the handicap reasonably precludes the performance of the particular employment." N.J.S.A. 10:5-4.1. After examining appellant's proofs, including those concerning the physical demands of the job to which Panettieri sought reinstatement, he concluded that appellant had failed to meet this burden. His recommendation that Panettieri be reinstated, with back pay, together with costs, interest and humiliation damages, was accepted by the Division.
Appellant first contends, as it did in its exceptions to the findings and conclusions of the hearing examiner, that the latter erred in regarding the burden of proof as having shifted after Panettieri established a prima facie case of unlawful discrimination. We disagree. We regard the Director's *482 statement of the law, in this regard, as accurate. He stated:
When a complainant has shown that the complainant's physical handicap falls within the definition of physical handicap as defined in N.J.S.A. 10:5-5(q) that he was qualified for the position, and the employer has denied reinstatement to employment because of physical handicap, a strong prima facie case of discrimination is made out and the burden shifts to the Respondents to articulate some legitimate non-discriminatory reason for their action. Jackson v. Concord Company, 54 N.J. 113 (1969).
Appellant argues that Jackson v. Concord Company, 54 N.J. 113 (1969), fails to support the Director's view that the burden of proof shifts following presentation of a prima facie case of discrimination. It points to language therein affirming a complainant's continued burden of persuasion throughout an unlawful discrimination case with only the burden of providing an explanation imposed upon a respondent following a prima facie showing of unlawful discriminatory conduct.
Although Jackson v. Concord Company does contain the language accurately recounted and relied upon by respondent, it has no application to this case because this is a case of alleged discrimination based upon a physical handicap, a potential liability subject to an applicable statutory exception shielding an employer from liability which might otherwise attach. None of the exceptions to the statute under which Jackson was decided proscribing discrimination in renting an apartment (N.J.S.A. 10:5-5(n)), were deemed pertinent. Hence, in such circumstances, the burden of persuasion was held not to have shifted to the lessor, the latter's only burden being to provide an innocent explanation for what would otherwise appear to be unlawfully discriminatory conduct.
In cases such as this one, however, involving alleged discrimination in employment based upon a physical handicap, an employer is favored by the governing statute with the *483 possibility of establishing an exception to such liability. N.J.S.A. 10:5-4.1 provides:
All of the provisions of the act to which this act is a supplement shall be construed to prohibit any unlawful discrimination against any person because of the physical handicap of such person or any unlawful employment practice against such person, unless the nature and extent of the handicap reasonably precludes the performance of the particular employment. [Emphasis supplied]
Similarly, under N.J.S.A. 10:5-2.1, a provision upon which respondent places considerable reliance, the employer is afforded the opportunity of showing that in its opinion, "reasonably arrived at," the employee was unable to "perform adequately his duties." Both provisions, read together, therefore present an employer with the opportunity of showing that conduct, which would otherwise be viewed as discriminatory, should not be so viewed because in its reasonably derived opinion the nature or the extent of the job applicant's handicap precludes performance of the job.
Since the inception of the Law Against Discrimination in L. 1945, c. 169, our courts have repeatedly recognized its humanitarian concerns, its remedial nature and the liberal construction to be accorded it. See Jackson v. Concord Co., supra; Levitt Sons, Inc. v. Division Against Discrimination, 31 N.J. 514, 524, app. dism. 363 U.S. 418, 80 S.Ct. 1257, 4 L.Ed.2d 1515 (1960); Zahorian v. Russell Fitt Real Estate Agency, 62 N.J. 399, 410-412 (1973). As stated in Passaic Daily News v. Blair, 63 N.J. 474 (1963):
This court has heretofore adopted a broadly sympathetic construction of the Law Against Discrimination and has interpreted the provisions thereof pertaining to the remedial powers of the Division on Civil Rights and the Director thereof with that high degree of liberality which comports with the preeminent social significance of its purposes and objects. [at 484]
The remedial nature of this law strongly suggests that all statutory exceptions to the liability imposed be established *484 by the person seeking to bring himself within their purview. See Yellow Cab Co. v. State, 126 N.J. Super. 81, 86-87 (App. Div. 1973); Sherman v. Coastal Cities Coach Co., 4 N.J. Super. 283, 290 (App. Div. 1949). Such distribution of evidential responsibilities has been applied even where the liability-creating principle of law has its genesis in court decision. See Barbato v. Alsan Masonry, 64 N.J. 514, 529-30, 536 (1974). Underlying this allocation of proof burden is recognition that the party to whom the burden shifts is in a better position to meet it than is the other party. In this case, for example, the employer is contending either that Panettieri could not, by reason of his prior heart attack, adequately perform his job responsibilities or, at least, that the employer's opinion of his incapacity was reasonably arrived at. Clearly, the employer is in a far better position to adduce proof with respect to that issue than is the handicapped employee. In short, the statutory exemption upon which the employer relies is quite similar in nature to the traditional affirmative defense, proof of which is traditionally borne by the party asserting it. By asserting this defense, the employer concedes the operative facts of a complainant's case, his handicap, his qualifications for the job (except for his handicap) and the denial of employment because of the handicap, but he asserts that, notwithstanding, he is not liable. In such cases, the employer should bear the burden of proving that such a defense has been established. We find such an allocation of proof burdens both logical and not inconsistent with standard law or with notions of fair play.
Although New Jersey has not yet spoken to this precise issue, authority from elsewhere is available. In New York Institute of Technology v. State Div. of Human Rights, 48 A.D.2d 132, 368 N.Y.S.2d 207, 209 (App. Div. 1975), rev'd on other grounds 40 N.Y.2d 316, 386 N.Y.S.2d 685, 353 N.E.2d 598 (Ct. App. 1976), the court allowed the Division ruling to stand since sufficient credible evidence supported the Commissioner's conclusion that a woman professor *485 had been the victim of discrimination when the "burden of explanation, which shifted to petitioner after a prima facie showing of a discriminatory practice, was not met."
In Chicago, Milwaukee, St. Paul & Pac. R.R. v. Wisconsin, 62 Wis.2d 392, 215 N.W.2d 443, 446 (Sup. Ct. 1974), a handicap discrimination case (asthma), the court placed the burden of proof on the employer to prove that its actions were exempted by a statutory provision analogous to the one being relied upon in this case.[1]
In Cooper v. Allen, 467 F.2d 836, 839 (5 Cir.1972), the court held that "once plaintiff shows a discriminatory effect, the burden shifts to defendant to prove the test's validity."
We therefore conclude that the Director properly held that once Panettieri established a prima facie case of unlawful discrimination on the basis of physical handicap (as he did), the burden of proof shifted to the employer to prove its defense that the nature and extent of the handicap was such as precluded performance of job duties or that the employer acted in accord with an opinion reasonably arrived at that such was the case.
Appellant next contends, in two related points of argument, that the Director erred in failing to make findings under N.J.S.A. 10:5-2.1 and that the complaint should have been dismissed on the basis of that enactment.
N.J.S.A. 10:5-2.1 limits the general proscriptions against discriminatory employment practices based upon all forbidden criteria (race, sex, age, as well as handicap) to the following extent:
Nothing contained in this act * * * shall be construed * * * to prevent the termination or change of the employment of any person *486 who in the opinion of his employer, reasonably arrived at, is unable to perform adequately his duties * * *.
The import of this provision is reasonably clear. Its purpose was to preserve to the employer the right to apply normal tests of employment eligibility. In short, when an employer demonstrates that a rejection of a job applicant resulted from its adverse evaluation of the applicant's general qualifications for the job, the employer will be found not to have discriminated against the applicant notwithstanding his membership in a protected group. Such proof, in effect, negatives discrimination on the basis of the forbidden criteria; by such proof the employer demonstrates that rejection was based upon lack of qualifications and not by reason of membership in a protected group.
The purpose sought to be achieved by the exception contained in N.J.S.A. 10:5-4.1, although closely related in theory, is distinguishable. First, it is an exception specifically applicable to the group sought to be protected by that provision, the physically handicapped. Second, proof that an employee cannot, by reason of his handicap, perform the duties of the particular employment does not, theoretically, negative the discrimination inherent in his rejection because of his handicap, but rather excuses it. In that sense, it is distinguishable in its purpose and effect from N.J.S.A. 10:5-2.1; proof of the latter is the antithesis of discrimination; proof of facts rendering N.J.S.A. 10:5-4.1 applicable excuses the employer's rejection of the applicant because of his handicap. Both are related, however, in their endeavor to secure to the employer the freedom to reject those applicants, members of groups favored by the Law Against Discrimination, who are unable to do the job, whether by reason of being generally unqualified or because a handicap impedes job performance. Behind both provisions is the purpose of securing to all employees equal access to employment despite membership in certain ethnic, religious, sex or age groups, or those who are, in some way, physically handicapped without, *487 however, affording those employees an advantage over others not members of the groups specified in this enactment. All job applicants or employees must be able to do the job they seek to fill regardless of membership in groups protected by the Law Against Discrimination.
In N.J.S.A. 10:5-2.1, the employer is expressly accorded some leeway in his evaluation of an applicant's job capabilities; that enactment gives effect to an opinion of lack of job qualifications or inability to perform on the job if that opinion is "reasonably arrived at." Hence, even were the hearing examiner to disagree with an employer's conclusion that the applicant was not qualified, he could not conclude that discrimination had been practiced if he also concluded that the opinion had been reasonably arrived at. Although no such freedom of action is expressly preserved to the employer by N.J.S.A. 10:5-4.1, we nonetheless conclude that it is implied therein. First, that conclusion is suggested by the statutory wording to the effect that the handicap "reasonably" precludes job performance. Second, since discrimination necessarily imports the making of choices, and hence requires an intent to discriminate on the basis of criteria forbidden by the Law Against Discrimination (race, sex, age, etc.), an employer who rejects a job applicant not because of his handicap per se but because of an opinion, reasonably arrived at, that the handicap precludes adequate job performance, he cannot and should not be found in violation of the Law Against Discrimination. See Jones v. College of Medicine and Dentistry of New Jersey, 155 N.J. Super. 232 (App. Div. 1977); Parker v. Dornbierer, 140 N.J. Super. 185, 189-90 (App. Div. 1976).
From the foregoing we conclude that the protection afforded an employer by N.J.S.A. 10:5-2.1 is no greater than that afforded by N.J.S.A. 10:5-4.1. Under both enactments an employer found to have reasonably arrived at an opinion that a job applicant cannot do the job whether because unqualified or because of a given handicap cannot be found liable for discrimination against that applicant.
*488 We are, of course, reminded by appellant that the hearing examiner never expressly found that appellant's opinion as to Panettieri's physical incapacity to do the job was not reasonably arrived at. Notwithstanding, we conclude that the extensive findings of the examiner so clearly imply such a finding that a remand for an express finding would be without value.
In seeking a reversal for absence of this finding, or at least a remand with instructions to make a finding thereon, appellant's central contention is that because it relied upon the opinion of its doctor as to Panettieri's job capabilities in light of his heart attack, its opinion that Panettieri's handicap reasonably precluded him from doing the job must have been "reasonably arrived at." We regard this argument as bordering on the frivolous. The employer in this case is a corporate entity, which can only act through its employees. Hence, Bik or Minieri is no more Panettieri's employer than was Dr. Flood. Dr. Flood was acting for the corporation when he made his recommendations and offered his opinion concerning Panettieri's job capabilities to the same extent as was Bik and Minieri when they rejected him because of his handicap. Hence, if Dr. Flood was unreasonable in concluding that Panettieri lacked capacity for the job to which he sought reinstatement, then the corporation must, in accordance with traditional principles of law, be regarded as so acting. Not much would be left of N.J.S.A. 10:5-4.1 were an employer to be insulated from liability for discrimination simply because it relied upon an unreasonable and arbitrary opinion of another of its employees when rejecting a handicapped applicant, even when that employee happens to be a doctor. We cannot conceive that the Legislature intended an exemption of that breadth when it adopted N.J.S.A. 10:5-4.1.
We have no doubt from the exhaustive findings and conclusions of Hearing Examiner Wildstein and the conclusions of the Director that Dr. Flood's opinion was properly viewed as not having been reasonably arrived at. Although not stated *489 in those terms, that conclusion is implicit in the findings that Dr. Flood made his recommendations over the contrary opinion of Panettieri's treating physician, without even a cursory physical examination, without knowledge of the demands of the job to which Panettieri sought reinstatement, and solely on the basis of his experience and the prior practice of his predecessor in office. Whether the employer was charged with meeting a burden of proof on this issue or merely going forward with a nondiscriminatory explanation of why Panettieri was not rehired, it fails, and the Division of Civil Rights properly so found.
Appellant next quarrels with a ruling by the hearing examiner by which he precluded cross-examination of Panettieri concerning whether the latter's sworn allegations in a claim petition for workers' compensation for permanent disability arising out of his heart attack were true. The record discloses, however, that all that appellant was forbidden to ask was whether Panettieri had committed perjury by the sworn allegations in his claim petition. No impediment was placed in appellant's way in asking for explanations of any perceived inconsistencies between those allegations and his testimony at the hearing, and, in fact, Panettieri offered an explanation which the hearing examiner accepted. In fact, the hearing examiner concluded, with substantial evidential support, that there was no inconsistency. It was undisputed that Panettieri suffered a myocardial infarction as a result of the heart attack. The damage to the heart was undoubtedly permanent and, if work-connection was found, he would be entitled to workers' compensation for that permanency. The extent of the disability and the amount of compensation would, of course, depend upon the medical opinion and the findings of the judge of compensation. The fact that he was claiming permanent disability of some undetermined degree of magnitude is not, in our view, inconsistent with his claim, persistently made during the hearing, that he was well able to do his former job. Nor is Panettieri's allegation of causal *490 connection in his claim petition at necessary variance with his contention that the nature of the job to which he seeks return would not precipitate another cardiac incident. Causal relation between a job and a heart attack must be established by expert proof, and Panettieri is clearly no expert. As he explained during the hearing, it was only after repeated rejection for work by appellant that out of desperation Panettieri filed the claim petition. The hearing examiner accepted this explanation and we see no reason why we shouldn't. We see no necessary inconsistency between the filing of a claim petition for an allegedly work-connected heart attack and a claim for discriminatory rejection from employment based upon the heart attack, at least before the merits of the claim petition have been adjudicated. Nor do we discern any legitimate slur on Panettieri's credibility for his action in filing both actions. In any event, the hearing examiner was apprised of the claim petition and its contents; the assessment of the effect of the claim petition on Panettieri's credibility fell within the legitimate scope of a factfinder's function. We see no error in this challenged ruling.
Although we agree with appellant that the hearing examiner erred in viewing the difference in treatment accorded to Cianfano and Panettieri as a "badge" of unlawful discrimination, we cannot, in light of the other massive findings in this case, view this error as crucial or having any capacity to affect the result.
We are, moreover, convinced that the decision under consideration was amply supported by the evidence. Here it should be stressed that at no time did appellant dispute the applicability of N.J.S.A. 10:5-4.1 to persons handicapped because of heart muscle damage from a heart attack. Nor did it contend that it would be justified in refusing employment to any heart attack victim because of fear of an increased exposure to workers' compensation liability. At all times appellant contended either that Panettieri's handicap reasonably precluded performance of his job duties or that its opinion, reasonably arrived at, that he was unable *491 to perform his duties adequately, justified its decision not to rehire him. The conclusions of the hearing examiner that the appellant had failed to show that Panettieri could not do the job finds overwhelming support in the record. The other finding, that Dr. Flood's opinion was not reasonably arrived at, was clearly implied.
In this connection, we think it appropriate to comment upon a concern voiced by the New Jersey Business and Industry Association, permitted participation in this appeal as amicus curiae, which can best be described by the statement thereof contained in its brief:
The Association's concern in this proceeding finds its focus in the relationship between the Worker's Compensation Law, N.J.S.A. 34:15-1 et seq., and § 4.1 of the Act, which requires an employer to employ a handicapped person "unless the nature and extent of the handicap reasonably precludes the performance of the particular employment." Put briefly, the Association fears that the Order under review will, unless this Court is mindful of the implications inherent therein, require employers to employ individuals who, because of a physical disability, are more likely to fall victim to compensable industrial accidents than are those not so afflicted. Should this occur, the unavoidable result will be more industrial accidents, more compensation payments to the victims thereof and their widows, higher premuims for workers' compensation coverage and, at the end of the road, higher prices to the consumer.
* * * The Order under review seems to imply that Mr. Panettieri's heart attack did not serve reasonably to preclude him from performing his job because, after such attack, he remained physically capable of performing the manual labor involved therein. We assert that this is an improper interpretation of that phrase. In light of the fact that the law requires the employer to be the employee's insurer for on-the-job injuries, and in light of the liberality of the New Jersey cases in allowing recovery to first and second heart attack victims * * * the employer must be allowed to consider the risk of a recurrence when hiring a heart attack victim or returning him to the job. * * * The relevant issue rather, is whether the employee has an increased risk of having another attack by returning to work.
We have not been unmindful of the Association's fears which we view, however, as being unfounded. Clearly an ability to do a job embraces not only the stamina, physical strength and dexterity required for adequate performance, *492 but also the ability to perform without a materially enhanced risk of death or serious illness, and N.J.S.A. 10:5-4.1 must be so construed. We cannot conceive that the Legislature when proscribing discrimination against those physically handicapped persons who were nonetheless able to do the job intended to force an employer into aiding a handicapped employee to further injure himself or to aggravate the intensity of the handicap from which he suffers accompanied by an obligation to make workers' compensation payments when such a result occurs. Such an interpretation would compromise the best interests of both workers and employers and makes no sense. Quite obviously, a materially enhanced risk of injury or death is a consideration in determining whether an employee's handicap "reasonably precludes the performance of the particular employment" or, under N.J.S.A. 10:5-2.1, that in the employer's opinion "reasonably arrived at" the employee "is unable to perform adequately his duties."
Such considerations are, however, not germane to this case. Panettieri was not rejected because the results of his heart attack were such as to reasonably induce a fear of recurrence should he be reemployed. No evidence was received supporting such a conclusion. The case was not tried on any such theory. Moreover, fear that reemployment of any heart victim, whatever the disabling extent of his cardiac condition, will increase the risk of recurrence and hence a work-connected death or disability with a concomitant insurance premium increase, is not a legitimate basis for his rejection as an employee. Affecting an individual's job opportunities by reason of his membership in one of the groups specified in the Law Against Discrimination is precisely what that law was designed to prevent. Although no evidence was received or offered thereon, we have no hesitancy in judicially noticing the fact that the results of heart attacks vary in their intensity and in the extent of heart tissue damage from individual to individual. Some victims emerge from an *493 attack virtually unscathed, others are limited to some extent in what they can do, while others are bedridden and will never be able to engage in gainful activity without substantial risk to their lives. No evidence was produced suggesting that heart attack victims, irrespective of the severity of the attack, present an enhanced risk of a repeated attack when returned to their former job. Nor do we know such a proposition to be a statistical fact. Even were it to be true, we would nonetheless not be persuaded. The philosophy underlying the Law Against Discrimination is that each individual shall be treated on an individual basis and not by reason of his membership in a group or classification of persons. Hence, each heart attack victim must be individually evaluated to determine whether he has the stamina, the dexterity, and the strength to do the job without a material risk of recurrence. If he has, then the employer must conclude that his handicap does not reasonably preclude performance of the particular employment and he cannot therefore be rejected as an employee simply because he is a heart attack victim. No such evaluation was made in this case. All the evidence was to the contrary. Panettieri's treating physician, the person primarily responsible for Panettieri's continued health, cleared him for return to his job. The later stress test administered confirmed Jaferi's judgment. Panettieri's heart attack did not, according to the testimony, result in serious heart damage. No one testified that a return to his former employment would risk Panettieri's life or health. Indeed, the testimony was to the contrary.
Hence, we perceive no unjust relationship between the Workers' Compensation Act, as interpreted by court decision, and the demands of N.J.S.A. 10:5-4.1. Both enactments are in harmony and can be applied without prejudice to the legitimate interests of employers or handicapped employees.
Finally, appellant contends, without merit, that the Director erred in denying its motion to reopen on the ground of fraud. From the motion papers and the brief on appeal *494 it appears that appellant is first challenging Panettieri's fluency in the English language. At the hearing Panettieri testified through an interpreter because, as he stated, "I cannot understand and express myself fully in the English language." In appellant's moving papers it is stated that Panettieri speaks English well, needs no interpreter, and appellant is in a position to prove that fact through one Dr. Gouley, who examined Panettieri in connection with the pending claim petition. Again, we find no inconsistency. We can well understand the felt need of one who cannot "fully" understand or express himself in English for an interpreter in order to testify and handle himself with confidence on cross-examination. In any event, there was little complaint about the use of the interpreter during the hearing and no showing that use of the interpreter hindered appellant's ability to put in its case.
Another basis offered for reopening the proceedings was proffered testimony of Dr. Gouley that Panettieri had admitted to him that he had taken a nitroglycerine tablet 15 days before the examination, whereas during testimony Panettieri had testified that although he carried the pills with him he rarely, if ever, took any. We question, in light of all the medical testimony adduced, including that of Panettieri's treating doctor, and the results of the stress test, whether consideration of such testimony could have affected the result. The hearing examiner did not find it inconsistent. Nor do we. In any event, the proffered evidence having only impeaching or contradictory value, if any, does not meet the test of newly discovered evidence justifying or requiring the reopening of a final disposition.
Finally, reopening was not required in order to receive testimony from Dr. Gouley concerning Panettieri's ability to do the job. Had appellant desired other medical opinion on this issue, it could have easily secured it before the hearing. That Dr. Gouley fortuitously examined Panettieri in connection *495 with the pending claim petition provides no basis for reopening proceedings.
Affirmed.
HORN, J.A.D., concurring.
Although I concur with my colleagues in affirming the decision under appeal, I am unable to agree with the thesis expressed in the majority opinion that:
* * * [I]f Dr. Flood was unreasonable in concluding that Panettieri lacked capacity for the job [for] which he sought reinstatement, then the corporation must, in accordance with traditional principles of law, be regarded as so acting.
I am not willing to rest my concurrence on what is akin to the vicarious liability imposed upon an employer as a result of conduct of an employee acting within the scope of his employment. In this case, although Dr. Flood performed his professional services exclusively for the employer, it does not follow that he was an employee in the sense that his deficiencies are imputed ipso facto to the employer. I would conceive his status to be that of an independent contractor. Cf. Claus v. Brodhead, 36 N.J. Super. 598 (Law Div. 1955).
Nonetheless, the record here amply supports the examiner's view that under all the circumstances the decision of the employer not to rehire respondent was not "reasonably arrived at." I am expressly in accord with the following statements of the majority:
We have no doubt from the exhaustive findings and conclusions of Hearing Examiner Wildstein and the conclusions of the Director that Dr. Flood's opinion was properly viewed as not having been reasonably arrived at. Although not stated in those terms, that conclusion is implicit in the findings that Dr. Flood made his recommendations over the contrary opinion of Panettieri's treating physician, without even a cursory physical examination, without knowledge of the demands of the job to which Panettieri sought reinstatement, and solely on the basis of his experience and the prior practice of his predecessor in office.
*496 But I would also add that the employer knew or should have known of the lack of examination and unacceptable limitations of the underlying basis for Dr. Flood's opinion. N.J.S.A. 10:5-4.1 requires consideration of (1) the nature of the handicap, (2) the extent of the handicap, (3) the nature of the employment of the worker and (4) whether the performance of the particular employment is reasonably precluded by both the nature and the extent of the handicap in question. Finally, it appears that Dr. Flood's opinion may have been dictated by a policy of the employer adopted by it in 1974 without his participation and of which he was later informed. Moreover, Panettieri informed Bik that Dr. Flood had not performed a physical examination of him.
NOTES
[1] "The prohibition against discrimination because of handicap does not apply to failure of an employer to employ or retain as an employe any person who because of a handicap is physically or otherwise unable to efficiently perform, at the standards set by the employer, the duties required in that job."