MERCER COUNTY CIRCUIT COURT.

HARRY C. HARPER, COMMISSIONER OF LABOR OF THE STATE OF NEW JERSEY, PLAINTIFF, v. NEW JERSEY MANUFACTURERS CASUALTY INSURANCE COMPANY, DEFENDANT.

Decided April 9, 1948.

For the plaintiff, *Walter D. Van Riper,* Attorney-General (by *Grace J. Ford,* Assistant Deputy Attorney-General).

For the defendant, *George E. Meredith.*

SMALLEY, C. C. J.   This action was tried without a jury in accordance with application made and stipulations filed.

Suit is brought by the plaintiff to recover from the defendant the sum of $7,229.54.

Plaintiff claims that this sum is due from the defendant, pursuant to *R. S.* 34:15-94; *N. J. S. A.* 34:15-94.

"*R. S.* 34:15-94; *N. J. S. A.* 34:15-94. PAYMENTS TO COMMISSIONER OF LABOR; AMOUNT OF FUND. Each mutual association or stock company writing compensation or employers' liability insurance in this state, and each self-insurer, shall annually, on or before March first in each year, pay to the commissioner of labor a sum equal to one per cent. of the total compensation paid out by such mutual association, stock company or self-insurer during the calendar year next preceding the due date of such payment. Such sum shall be paid by the commissioner of labor to the state treasurer.

"When the total amount of all such payments into the fund, together with the accumulated interest thereon, equals or exceeds one and one-half million dollars ($1,500,000.00) no further contributions to said fund shall be required to be made; but whenever, thereafter, the amount of such sum shall be reduced below one and one-half million dollars ($1,500,000.00) by reason of payments out of such funds pursuant to section 34:15-95 of this title, then such contributions to such fund shall be resumed forthwith, and shall continue until such sum shall again amount to one and one-half million dollars ($1,500,000.00) together with accumulated interest thereon."

The condition of the fund on hand being less than $1,500,000 makes the payments as required under the statute due and owing.

Plaintiff is the Commissioner of Labor of the State of New Jersey, and the person designated by *R. S.* 34:15-94; *N. J. S. A.* 34:15-94, to receive these payments.

Plaintiff now seeks to recover from the defendant, one per cent. of the total compensation paid by the defendant company during the calendar year of 1945.

Defendant is a mutual association organized and existing under, and by virtue of the laws of the State of New Jersey, writing compensation for employers' liability insurance in this state, and is therefore required to pay to the plaintiff the sum equal to one per cent. of the total compensation paid out by it during the calendar year of 1945, on or before the 1st day of March, 1946.

*R. S.* 34:15–13; *N. J. S. A.* 34:15–13, provides for the payment by the carrier of funeral expenses.

*R. S.* 34:15–15; *N. J. S. A.* 34:15–15, provides for the payment by the carrier of medical expenses.

Defendant admits that it has paid out, pursuant to *R. S.* 34:15–1, *et seq.; N. J. S. A.* 34:15–1, *et seq.,* the amount of $2,797,802.74, inclusive of the amount for medical aid and funeral expenses, for the calendar year of 1945. Defendant has paid to the plaintiff the sum of $20,056.84, but refuses to pay to the plaintiff one per cent. of the medical and funeral expenses, which amounts form the basis of this suit, it being defendant's contention that medical aid and funeral expenses are no part of "total compensation paid out."

There is no dispute as to these facts. The real issue is: does the term "total compensation paid out" as set forth in *R. S.* 34:15–94; *N. J. S. A.* 34:15–94, include medical and funeral expenses. If it does, the plaintiff is entitled to judgment for the amount as claimed. If the answer to the question is in the negative, there must be judgment for the defendant and against the plaintiff of no cause of action.

This "one per cent. fund" was constituted by the legislature to provide aid to "persons totally disabled, as a result of experiencing a subsequent permanent injury under conditions entitling such persons to compensations therefore, when such persons had previously been permanently and partially disabled from some other cause." *R. S.* 34:15–95; *N. J. S. A.* 34:15–95. To provide a fund for this purpose, the legislature required insurance carriers to pay to the Commissioners of Labor, "a sum equal to one per cent. of the total compensation paid out."

The parties, during the time of trial, recognizing the difficulty of presenting proof of payment to each and every individual receiving medical aid, stipulated the following:

"For the limited purpose of agreeing on a figure to guide the Court in the event that it decides that medical and funeral expenses are included in the term 'total compensation,' as stated in *R. S.* 34:15–94 [*N. J. S. A.* 34:15–94'], so as to make such payments subject to an assessment of one per centum (1%), the Defendant stipulates the amount of

$717,703.84 as the total of its medical expenses paid out in the calendar year 1945, and $5,250.00 as the total of its funeral expenses paid out in the same year." This stipulation, as entered, for the first time makes this matter one of statutory interpretation.

The legislature, in the year 1923, first established this "one per cent. fund," or "second injury fund." There were amendments by the legislature in 1931, 1936, 1938 and in 1945, but the pertinent phrase involved in this litigation namely, "* * * a sum equal to one per cent. of the total compensation paid out," has remained constant and unchanged up until the present time.

In 1945 the legislature removed the ceiling of $200,000 and increased the amount in this fund to $1,500,000. It did not change the language as to the basis of calculation that the carriers or self insurers were to use when required to make payments to the Commissioner of Labor.

Beginning in 1923 and up and until 1946, all personnel in authority connected with the Department of Labor never construed this assessment to include payments for medical aid and funeral expenses.

For the first time, in 1946 demand was made for this additional assessment based on the expenditure made by the defendant for medical and funeral expenses. What is it that has caused this change of position by those assigned to the plaintiff's office? It cannot be fairly said that it was the action of the legislature in the year 1945, because, the only pertinent change was to increase the amount of the fund. No change in the language of the act since its inception can therefore be the moving cause.

Plaintiff contends that the term "compensation," under the act, includes medical and funeral expenses and that our courts have heretofore so determined this question. R., pages 95 and 96. In support of this contention, plaintiff cites *Greif* v. *Betsy Ross Ice Cream Co.*, 19 *N. J. Mis. R.* 397; 20 *Atl. Rep.* (2d) 597; *affirmed*, 127 *N. J. L.* 323; 22 *Atl. Rep.* (2d) 571. In the Pleas the court said (19 *N. J. Mis. R.* (at *p.* 400); 20 *Atl. Rep.* (2d) (at *p.* 599)):

"It is the opinion of this court that the rendition of medi-

cal treatment is an integral part of the humane intention of the legislature to give to employees the protection required under the exigencies. Medical treatment is as much a part of the compensation as the monetary award and a contrary interpretation would be inimicable to the whole theory of this social legislation."

In the Supreme Court opinion (127 *N. J. L.* (at *p.* 324); 22 *Atl. Rep.* (2d) 571, 572) it was said:

"We think the following words of the statute are significant: 'Any payment made in accordance with the provisions of article 11 of this chapter (34:15–7, *et seq.*) shall constitute an agreement for compensation.' [*N. J. S. A.* 34:15–51.] The several classes of compensation run consecutively (34:15–16)."

By reason of this pronouncement, plaintiff asks this court to construe the term "compensation" so as to include medical and funeral expenses in the calculations, when contributions from the carriers and self insurers are required.

If this decision is dispositive of the problem, then this court's work is easily and quickly accomplished, but I can not so agree.

Greif suffered an accident arising out of and in the course of his employment on the 1st day of September, 1938. On October 5th, 1940, the petition for compensation was filed. The sole question was, whether the employer's act in reimbursing the employee on January 11th, 1939, for a surgical belt in the amount of $25 and on February 6th, 1939, for bandages and adhesives in the sum of $9.19, extended the time to file a claim beyond the two year period.

There the court refused to deny to the injured workman the right to have his claim adjudicated by the imposition of the technical defense of the statute of limitations. The court did not define the word "compensation," but did construe the meaning and effect of the words "any payment" as used in *R. S.* 34:15–51; *N. J. S. A.* 34:15–51. It said, in substance, that an employer could not furnish to his injured employee medical aid and at the very same time rely on the statute of limitations, in the event the petition for compensation was not filed within two years of the happening of the accident.

Here we are concerned with the matter of an assessment. Called by any other name, it is still nothing but a tax measure. The principles involved are far and away from common ground and the rule enunciated in one can not bind nor fit the other.

It is trite, but true, to say that workmen's compensation is social legislation and must be liberally construed. It is equally true to say that any legislation, if it be of a tax nature, must be strictly construed. *Public Service Co-ordinated Transport* v. *State Board of Tax Appeals,* 115 *N. J. L.* 97; 178 *Atl. Rep.* 550.

What is possibly the best available definition of the term "compensation," appears in the statute itself in the language of *R. S.* 34:15–25; *N. J. S. A.* 34:15–25:

"* * * The bureau and the judge of the court of common pleas will regard the intention of this chapter that compensation payments are in lieu of wages, and are to be received by the injured employee or his dependents in the same manner in which wages are ordinarily paid."

The defendant in his brief at page 25 makes a statement worth quoting. "It seems apparent, therefore, that the industry of counsel for the plaintiff has been unable to find a case in New Jersey which precisely defines the term 'compensation,' and the writer of this Brief, after a reasonably thorough search, confesses to the same inability."

This dearth of cited authority has caused this court to join the hunt for some real guide in determining this interesting and novel question. Having been asked to take judicial notice of one Governor's message, I have read several such messages and find in the year 1945 (the year when the amount in this fund was increased to $1,500,000) that Governor Edge, in his first annual message to the legislature, on January 5th, 1945, at page 10, said:

"* * * I am recommending immediate legislation to remove the present statutory limit of $200,000 on the amount of the one per cent. or 'second injury' fund. This fund is used to compensate workers who become totally disabled from the effects of industrial injury following a previous disability. The fund is maintained by contributions from insurance car-

riers and these carriers are both willing and able to continue their contributions. Repeal of the statutory limit will clear the way for them to do so and also will assure protection to those whom we wish most to aid."

The legislature's response to this message was prompt. It proceeded to adopt in the very next month, February, 1945, chapter 10 of the laws of 1945 (*R. S.* 34:15–94; *N. J. S. A.* 34:15–94) which removed the ceiling and increased the fund from $200,000 to $1,500,000. It did not change the language in the method of calculating the assessment. Nothing is disclosed that spells out an intention to increase the scope of the assessment to include some items never before assessed.

Failure to enact the legislation of 1945 would have meant no further contribution by the carriers or self insurers; the amount in the fund at that time being far in excess of $200,000. See R., pages 10 and 11.

This action by the legislature to continue the contributions must not be interpreted as enlarging the scope of the tax or assessment. If that is what the legislature had in mind, and it must be presumed that it had knowledge of the method of calculating this assessment, it would have amended the pertinent part of the act and enlarged the scope of the assessment.

As was said in *Young* v. *Civil Service Commission,* 127 *N. J. L.* 329 (at *p.* 332) ; 22 *Atl. Rep.* (*2d*) 523 (at *p.* 525), "the matter was one within the control of the legislature and we deem it significant that, with the knowledge of this construction of the statute, the legislature did nothing to indicate disproval of this construction."

Since the date of the inception of this "one per cent. fund" (1923), and until the time of this suit (1946), those charged with the collection of these funds have never sought to include medical and funeral expenses as proper items in calculating the amount due from the carriers or self insurers to the Commissioner of Labor.

The established custom and practice of those who have been long connected with the administration of this complex and social program must be given real consideration when there is no judicial determination to the contrary.

In *Central Railroad Company of New Jersey et al.* v. *Thayer-Martin*, 114 *N. J. L.* 69 (at *p.* 78) ; 175 *Atl. Rep.* 637 (at *p.* 641), the court, after citing a long line of cases, enunciated the rule that will govern this court.

"* * * The practical construction given to the law by the board for nearly half a century on which it reached its conclusions is strong evidence that it is right. It has become the firmly rooted, established, and fixed law applicable thereto. It cannot, under these circumstances, be changed by or through the judicial branch of our government. The relief, if any, prosecutors are entitled to have in the premises must come, if at all, by or through the legislative branch of our government. This we think is the well-settled law."

If the plaintiff is to succeed in this suit, he must do so solely because of his interpretation of the principle laid down in *Greif* v. *Betsy Ross Ice Cream Co., supra.*

Having expressed an unwillingness to follow this interpretation, and being unable to find that the term "compensation" is therein specifically defined, this court is equally unwilling to cast aside statutory definitions, legislative intent, established custom and practical interpretation, and indulge in judicial legislation.

I therefore find and determine, that the plaintiff has failed to establish that there is due from the defendant the stipulated sum of $7,229.54, and that the term "compensation," or "total compensation," as set forth in *R. S.* 34:15–94; *N. J. S. A.* 34:15–94, does not include medical and funeral expenses.

Judgment, therefore, will be entered in favor of the defendant and against the plaintiff of no cause of action.