HARRY C. HARPER, COMMISSIONER OF LABOR OF THE
STATE OF NEW JERSEY, PLAINTIFF–APPELLANT, v.
NEW JERSEY MANUFACTURERS CASUALTY INSURANCE
COMPANY, DEFENDANT–RESPONDENT.

Argued October 18, 1948—Decided November 15, 1948.

*Miss Grace J. Ford* argued the cause for the plaintiff-appellant (*Mr. Walter D. Van Riper,* Attorney General, attorney).

*Mr. George E. Meredith* argued the cause for the defendant-respondent.

The opinion of the court was delivered by

CASE, J. The question is whether the term "total compensation" as used in *R. S.* 34:15–94 includes medical expenses and funeral expenses. The Commissioner of Labor brought suit in the Mercer County Circuit Court to recover the sum of $7,229.54 assessed. against the defendant on its 1945 expenditures for those items. Circuit Court Judge Smalley, sitting by consent in the trial without a jury, answered the question in the negative and accordingly rendered judgment for the defendant. The Commissioner appeals.

The cited section sets up what is known as the "one per cent fund". It was first passed as *section* 1 *of Chapter* 81, *Pamphlet Laws of* 1923. The pertinent language was the same then as now. Each company writing compensation or employers' liability insurance in this state and every self-insurer is required to pay annually "to the Commissioner of Labor a sum equal to one per centum of the total compensation paid out" by the insurer during the preceding calendar year. The moneys so collected constitute a fund out of which, under *R. S.* 34:15–95, the Commissioner of Labor annually sets aside a sum from which compensation payments are made to persons totally, disabled under conditions which do not require payment of compensation by the employer and which, therefore, do not require payment of compensation by an insurance company under its contract of indemnification.

The first demand for payment under the statute was in 1924 when the Commissioner of Labor caused to be circulated

an official form of return captioned "Tax Statement". It contained a space for the insertion by the respective insurer of the sum paid out as compensation under the statute to injured employees or dependents and in terms excluded the items now in dispute. The words were:—"This sum is exclusive of amounts expended for medical, hospital or other like service". That form of official return and the collection of one percentum calculated on payments which specifically did not include disbursements for medical, hospital or like service continued in uninterrupted use without material change until 1945, when the form for the 1944 return was altered to omit the statement of exclusion and to contain no allusion to medical or like services. Notwithstanding the deletion of the mentioned matter from the 1945 forms, no demand was made for information related to or for the payment of a percentage on medical or like disbursements. In 1946 the form, for the first time, called for the inclusion of medical expenses as part of the compensation paid out and in so doing used this language: " * * * this company paid out as total compensation (including medical expenses) * * *", leaving a space for the datum to be inserted and with this addendum:—

"Amount of compensation paid     $
 Amount of medical expenses paid    $ "

Thus, for the first time, after twenty two years of official interpretation *contra* by a succession of public officers, was the statutory phrase "total compensation paid out" construed to include payments for medical services; and notwithstanding the change in the net result the form conspicuously contrasted "compensation paid" with "medical expenses paid". The defendant company and other companies refused to pay the charge on medical payments. Thereupon the Commissioner of Labor instituted this suit, in the nature of a test case, and not only makes claim for the percentage on medical payments but also— and this question was not raised until presented in the filed complaint—on moneys paid for funeral expenses.

By *R. S.* 34:15–89/90/91 the Bureau of Compensation Rating and Inspection was created under the supervision of the Com-

missioner of Banking and Insurance. The bureau is burdened with the duty *inter alia* of establishing premium rates for workmen's compensation and employer's liability insurance and of establishing and maintaining rules and regulations affecting such insurance; and the Commissioner of Banking and Insurance is directed to appoint a special deputy to be ex-officio chairman of the bureau; also to appoint an actuary and necessary assistants to determine the pure cost of workmen's compensation and employer's liability insurance and to make the information available to the bureau in the fixing of rates. The meaning of the expression "total compensation" as used in the statute with respect to medical expenses was questioned some months after the original passage of the one per cent act by the National Council on Compensation Insurance in correspondence with the Special Deputy Commissioner of Banking and Insurance, the statutory chairman of the bureau, who considered that there was an adequate answer in the tax notice, *supra*, issued by the Department of Labor. Thus the accepted usage came not haphazardly or by driftage but with concurrent inquiry and decision.

The testimony discloses that there are 52 companies authorized to write workmen's compensation insurance in this state and that, in addition, there are about 200 self-insurers. The task of adjusting business, whether self insured or company insured, to the compensation of workmen under the statute, with the complications in the company insured risks of policy provisions and premium rates, has been worked out and operated under state supervision and direction for more than twenty years upon the conception that the present disputed items were not factors therein. Two state agencies, the Commissioner of Banking and Insurance and the Commissioner of Labor, have consistently and harmoniously functioned to that end. The distinction between "total compensation" and "medical expenses" clearly travels through the files, the records and the practices of all those who are burdened with the duty of enforcing, or of complying with, the statute.

Compensation is a word of broad significance. It is widely and commonly used with varying shades of meaning. We ap-

prehend that the statutes within our present study do not in all their parts give the same value to the expression. Court deci-sions which pass upon the word in one connection may not always be relied upon with confidence in defining the word in another use even within the same statute. The Court of Errors and Appeals, in *Everhart v. Newark Cleaning and Dyeing Co.,* 119 *N. J. L.* 108 *(1937),* construing a part of the Workmen's Compensation act, said *(p.* 114): "Compensation is measured by * * * earning power". Manifestly, if the criterion there mentioned be true of that which is to be called compensa-tion, neither medical services nor funeral expenses are com-pensation because they have no dependency upon or admeasure-ment by earning power; but the citation has no relevancy be-cause the court was not then speaking of the word in its pres-ent use.

Litigation arising out of the significance of the word as used in statutes relating to the compensation and benefits ac-cruing to injured workmen and their dependents, *Henry Steers, Inc. v. Turner Construction Company,* 104 *N. J. L.* 189 *(E. & A.* 1927), *Betsy Ross Ice Cream Co. v. Greif,* 127 *N. J. L.* 323 *(Sup. Ct.* 1941), *Oldfield v. New Jersey Realty Company,* 1 *N. J.* 63, attest to the doubt which has arisen in the minds of litigants and courts regarding its meanings in various uses. Therefore, contemporaneous construction and continued usage of the particular phraseology with which we are now con-cerned for a period of more than twenty years with common and undisputed acceptance by tax collector, taxpayer, bene-ficiary and all other persons interested in or placed under a duty by the legislation are entitled to respect. *Cf. In re Hud-son County,* 106 *N. J. L.* 62, 75 *(E. & A.* 1929), *Commonwealth Roofing Co. v. Riccio,* 81 *N. J. Eq.* 486, 488 *(E. & A.* 1913).

The original section, now appearing as *R. S.* 34:15–94, has been repeatedly amended, *ch.* 108, *P. L.* 1931, *ch.* 55, *P. L.* 1936, *ch.* 198, *P. L.* 1938, *ch.* 10, *P. L.* 1945, always, however, with the preservation of the pertinent language unchanged. It is hardly likely that these several reviews of the legislation were accomplished without the foreknowledge of the public officials to whom the enforcement of the laws was entrusted or

that the legislature itself was ignorant of the methods pursued in the operation of the fund. Where a statute has received a contemporaneous and practical interpretation, added weight is given the practical interpretation if the statute as interpreted is re-enacted. *Sutherland, Statutory Construction, 3rd ed. p.* 523, § 5109.

The legislation creating the fund was not passed as a part of the workmen's compensation statute. Nevertheless it is complementary to the latter statute and has, through the years, become, in its operation, somewhat integrated therewith. The legislature has made clear by sharp distinction in terms that it does not, at least that in all uses it does not, include medical expenses as a part of "compensation", as in *ch.* 279, *P. L.* 1931, amending *section 23(f)* of the Workmen's Compensation act— "a sum equivalent to the medical expenses incurred and the amount of compensation payments", and in *ch.* 162, *P. L.* 1936, which accentuates the distinction by stating the language four times. The matter is now in *R. S.* 34:15–40. *Cf. Oldfield v. New Jersey Realty Company, supra.*

■ The forms emanating from the department have been, as stated above, entitled "Tax Statement". The receipts issued from the bureau have consistently been entitled "Receipt for Tax". The same descriptive words were used by the State Tax Department when it was the agency designated to make the collection. The courts have referred to the fund as "tax moneys". *Voessler v. Palm Fetchteler & Co.,* 120 *N. J. L.* 553 *(Sup. Ct.,* 1938),* affirmed on the opinion below, 122 *N. J. L.* 434 *(E. & A.,* 1939)*. It was recently held by the Oregon Supreme Court in *State Industrial Accident Commission v. Aebi,* 161 *A. L. R.* 211, 162 *P. 2d* 513 *(1945),* that a discharge in bankruptcy did not discharge a judgment against an employer in favor of the Oregon Industrial Accident Commission for amounts due under the Workmen's Compensation act since the judgment was one for taxes within the meaning of the federal bankruptcy act. We shall not, however, attempt to answer the vexed question of what, technically, is a tax, or, assuming that the present imposition comes within the generic term of tax, determine what place it should be accorded in the list of enforced

contributions which come within that category; but the imposition is sufficiently of the nature of a tax to require ambiguous language in the statute to be construed, as between the payer and the fund, favorably to one who is called upon to pay the levy. It seems to be conceded that funeral and medical expenses should be accorded the same treatment.

We conclude that the term "total compensation" as used in *R. S.* 34:15–94 does not include either medical expenses or funeral expenses. The judgment under appeal will be affirmed.

HEHER, J. (dissenting). While long-continued contemporaneous and practical interpretation of a doubtful statute by the executive officer charged with its administration and enforcement is of aid in determining its meaning, such interpretation should always be rejected where it is unreasonable and clearly erroneous. *Sutherland on Statutory Construction (3rd ed., 1943), sections* 5103, 5104; 50 *Am. Jur., Statutes, section* 319 *(1944).* I consider the administrative construction here in that category.

The basic statutory provision for "compensation" uses the term in its broad and usual sense. This would seem to constitute a general definition. It provides: "Compensation for all classes of injuries shall run consecutively, and not concurrently, except as provided in *section* 34:15–15 *of this title,* as follows: First, medical and hospital services and medicines as provided in said *section* 34:15–15. After the waiting period, compensation during temporary disability. If total period of disability extends beyond seven weeks, compensation to cover waiting period. Following both, either or none of the above, compensation consecutively for each permanent injury. Following any or all or none of the above, if death results from the accident, expenses of last sickness and burial. Following which compensation to dependents, if any." *R. S.* 34:15–16. I submit that the term "total compensation paid out" in *section* 34:15–94 has this identical significance. There is nothing in the context to suggest a restricted usage at variance with the sense of the term as used in the basic provision. Compare *Henry Steers, Inc. v. Turner Construction Co.,* 104 *N. J. L.* 189 *(E. & A.* 1927).

It is an elementary rule in aid of interpretation that, barring differentiation in the context, where the same word or phrase is used more than once in a statute in relation to the same subject matter, and in one connection its meaning is clear and in another it is doubtful or obscure, it is in the latter case given the same construction as in the former. Compare *United States v. Cooper Corporation,* 312 *U. S.* 600, 61 *S. Ct.* 742, 85 *L. Ed.* 1071; *Alexander v. Alexandria,* 5 *Cranch* 1, 3 *L. Ed.* 19; *Hood Rubber Co. v. Commissioner of Corporations & Taxation,* 268 *Mass.* 355, 167 *N. E.* 670, 70 *A. L. R.* 1. There is no indication that the word "compensation" was used with different intent in the fundamental provision of the original act and the later statute now under review.

"Compensation" is, generally, the equivalent of recompense— that which compensates for loss or privation. This is Webster's definition, in pertinent part. Is not reimbursement of moneys expended for medical service and burial just as much compensation as the periodic payment of a proportionate part of the wages lost by reason of disability? Why should the term "compensation" have peculiar application to the latter? In the statutory view, there is compensation for disability and compensation for medical service and burial. In 71 *C. J. (Workmen's Compensation) section* 487, *p.* 773, it is said that "payments of medical, surgical, or hospital expenses have been held to be incidental to, and to constitute a part of, the 'compensation' for the injury, although they are not considered as such for all purposes."

The contrary administrative construction does not warrant what I conceive to be a plain disregard of the statute. The re-enactment of statute without change in the language of the particular provision does not signify legislative acquiescence in the administrative interpretation, and an intention to adopt it, unless the Legislature had notice of such interpretation; and there is no indication of that. *Sutherland on Statutory Construction (3rd ed.* 1943), *section* 5109. Compare *Apex Hosiery Co. v. Leader,* 310 *U. S.* 469, 60 *S. Ct.* 982, 84 *L. Ed.* 1311. And a later administrative interpretation will be permitted to alter a former re-enacted construction, although not

retroactively. *Helvering v. Wilshire Oil Co.,* 308 *U. S.* 90, 60 *S. Ct.* 18, 84 *L. Ed.* 101.

Thus, a reversal of the long-continued contemporaneous interpretation would not have a retroactive effect, and therefore would not be attended with hardship or practical difficulty. See, also, *Waterbury Savings Bank v. Danaher,* 128 *Conn.* 78, 20 *Atl. (2d)* 455 (*1941*).

I would reverse the judgment.

*For affirmance:* Chief Justice VANDERBILT and Justices CASE, OLIPHANT, WACHENFELD, BURLING, and ACKERSON—6.

*For reversal:* Justice HEHER—1.