ANDREW, J.T.C.
In these consolidated state tax actions plaintiffs seek refunds of retaliatory tax imposed by New Jersey pursuant to N.J.S.A. 17:32-15 for the tax years 1975, 1976, 1977 and 1978. As framed by the parties, the single issue in this case is whether plaintiffs’ contributions to the New Jersey Second Injury Fund, required by N.J.S.A. 34:15-94, may be taken into account in computing their retaliatory tax liability. All parties have moved for summary judgment pursuant to R. 4:46. A review of the pleadings, written stipulations of fact and affidavits reveals that there are no issues of material fact remaining in this matter; therefore the motions for summary judgment may be appropriately entertained at this time. Ibid.; Judson v. Peoples Bank and Trust Co. of Westfield, 17 N.J. 67, 73-75, 110 A.2d 24 (1954).
During the years in question plaintiffs were insurance companies domiciled in Massachusetts with their principal places of business in Boston. Plaintiffs were licensed to transact the business of insurance, including the writing of workers’ compensation insurance, in New Jersey.
In connection with their workers’ compensation business, plaintiffs were required to make payments to New Jersey’s Second Injury Fund (the Fund) pursuant to N.J.S.A. 34:15-94. As recently explained by our Supreme Court:
This Fund is available for compensation where a worker suffers injuries in a compensable accident, which injuries together with a previous permanent partial disability from some other cause result in total and permanent disability. Since employers are liable only for the disability attributable to the worker’s employment, the Fund exists to compensate the worker for the balance of his disability. [Lewicki v. N.J. Art Foundry, 88 N.J. 75, 79, 438 A.2d 544 (1981)]
The court in Lewieki related a classic example in order to explain the purpose of the Fund:
A has lost the sight of one eye in an accident. He is therefore rendered 25% disabled. He subsequently secured a job with B firm. Due to industrial accident he loses his other eye, rendering him totally blind and 100% disabled. [Id. at 83, 438 A.2d 544]
*329 Prior decisions of the New Jersey courts had rendered B firm liable for the 100% total and permanent disability, even though the employee had lost only one eye while in the employ of B. See, e.g., Combination Rubber Mfg. Co. v. Obser, 95 N.J.L. 43, 115 A. 138 (Sup.Ct.1920), aff'd 96 N.J.L. 544, 115 A. 138 (E. & A. 1921). To relieve employers from the burden of paying for disabilities which were unrelated to the injured worker’s employment, and to encourage the hiring of partially disabled employees, who might not otherwise be hired due to an employer’s fear of a potential liability to compensate for a total disability, the Legislature enacted what has come to be known as the Second Injury Fund.[1] See Lewicki v. N.J. Art Foundry, supra 88 N.J. at 83, 438 A.2d 544; Paul v. Baltimore Upholstering Co., 66 N.J. 111, 125, 328 A.2d 610 (1974). The worker’s employer, who is sometimes self-insured, but more often through his workers’ compensation insurer, compensates the employee for the loss, in the example stated above, of the second eye. The Fund pays the excess amount attributable to the total disability. “The worker receives compensation for the full measure of his disability and the employer is relieved of that portion of the burden unrelated to the employment.” Lewicki v. N.J. Art Foundry, supra 88 N.J. at 83, 438 A.2d 544. Where the employer is covered by insurance, the effect of the Fund is to shift from the insurance carrier to the Fund the burden of paying for the portion of the total disability attributable to the prior condition.
The Fund is made up of payments assessed against workers’ compensation insurers and self-insured employers. N.J.S.A. 34:15-94. The amount of the assessment is based upon the amount of the insurer’s workers’ compensation payments made the previous year.
*330 During the years at issue, plaintiffs made payments to the Second Injury Fund as follows:
Employers’ Fire Ins. Co.
Year Amount
1975 $26,868.01
1976 25,930.81
1977 30,990.57 Northern Assurance Co. of America
Year
1975
1976
1977
Amount
$15,939.62
38,784.24
53,612.55
American Employers’ Ins. Co.
Year Amount
1978
$6,826.45
Commercial Union Ins. Co.
Year
1975
1976
1977
1978
Amount
$ 71,406.74
109,281.83
117,610.13
160,106.37
Under N.J.S.A. 17:32-15 plaintiffs as foreign, nonlife insurance companies, were required to pay New Jersey retaliatory tax. The statutory provision, in relevant part, is as follows:
When by the laws of any other state .. . any premium or income or other taxes, or any fees, fines, penalties, licenses, deposit requirements or other obligations, prohibitions or restrictions are imposed upon New Jersey insurance companies, ... doing business in such other State . .. which are in excess of such taxes, fees, fines, penalties, licenses, deposit requirements or other obligations, prohibitions or restrictions imposed upon insurance companies ... of such other State ... doing business in New Jersey ... so long as such laws continue in force the same premium or income or other taxes, or fees, fines, penalties, licenses, deposit requirements or other obligations, prohibitions and restrictions of whatever kind shall be imposed upon insurance companies ... of such other State . .. doing business in New Jersey.. .. The provisions of this section shall not apply to ad valorem taxes on real or personal property or to personal income taxes.
In upholding California’s retaliatory tax against a constitutional challenge, the United States Supreme Court noted that “the principal purpose of retaliatory tax laws is to promote the interstate business of domestic insurers by deterring other States from enacting discriminatory or excessive taxes. ... ” Western and Southern Life Ins. Co. v. State Bd. of Equalization of California, 451 U.S. 648, 668, 101 S.Ct. 2070, 2083, 68 L.Ed.2d 514 (1981). The court also observed that “it is clear that the *331 purpose is not to generate revenue at the expense of out-of-state insurers, but to apply pressure on other States to maintain low taxes on California insurers.” Id. at 669, 101 S.Ct. at 2084. See, also, Annotation, “Constitutionality, construction, operation, and effect of retaliatory statutes against foreign corporations doing business within state,” 91 A.L.R. 795 (1934).
Ostensibly, New Jersey’s retaliatory tax was designed to serve the same purpose. The tax is administered in the following manner. The New Jersey Department of Insurance requires a foreign insurer to compute its New Jersey tax liability on its New Jersey business. The foreign insurer must then compute a hypothetical tax on its New Jersey business under the insurance tax laws applicable to foreign insurers in the insurer’s home state. If the amount of taxes computed in the second step exceeds the taxes computed in the first step, the Department advises defendant Director, Division of Taxation, of the difference, and defendant assesses that amount as retaliatory tax.
In filing their 1975 and 1976 retaliatory tax returns, plaintiffs did not include New Jersey Second Injury Fund assessments as “taxes, fees, fines, penalties, licenses, deposit requirements or other obligations, prohibitions or restrictions,” but subsequently filed timely amended returns, claiming credit for Fund assessments in the computation of the retaliatory tax.[2] Plaintiffs claimed credit for Fund assessments on their 1977 and 1978 retaliatory tax returns.[3]
On February 15,1980 the Department of Insurance disallowed the credits for Fund assessments, thereby denying plaintiffs’ claims for refunds of the 1975 and 1976 retaliatory tax, and determining that plaintiffs’ liability for 1977 and 1978 should be increased. A protest was timely filed, and the Division of *332 Taxation, on December 19, 1980, sent a final determination upholding the denial of Fund Assessment credits against the retaliatory tax.
Plaintiffs appealed to this court, claiming the following refunds of retaliatory tax:
Employers’ Fire Ins. Co. American Employers’ Ins. Co.
Year Amount Year Amount
1975 $7,742.64
1976 352.76
1977 1,130.92 Northern Assurance Co. of America
1978
$2,825.86
Commercial Union Ins. Co.
Year
Amount Year
Amount
1975 $8,283.14 1975
1976 1,205.86 1976
1977 631.20 1977
1978
$71,406.74
31,701.97
22,011.58
11,182.02
During the relevant period, Massachusetts, plaintiffs’ domiciliary state, had a similar statutory provision requiring workers’ compensation insurers doing business in Massachusetts to make contributions to the Massachusetts Second Injury Fund. M.G.L. A., c. 152, § 65. Because of the financial adequacy of its Fund, Massachusetts did not require assessments pursuant to M.G.L.A., e. 152, § 65, during the years at issue. Consequently, hypothetical New Jersey insurers writing the same kind and amount of workers’ compensation insurance in Massachusetts as plaintiffs did in New Jersey during the years at issue would not have been required to make payments to the Massachusetts Second Injury Fund.
Plaintiffs contend that their payments to the Fund are included within the class of burdens that the Legislature intended to be taken into account in determining the difference between the “premium or income or other taxes, or fees, fines, penalties, *333 licenses, deposit requirements or other obligations, prohibitions and restrictions of whatever kind” imposed by Massachusetts on New Jersey insurers and those imposed by New Jersey on Massachusetts insurers. They argue that the Legislature plainly intended to equalize the obligations imposed by the two states on insurers, and that inclusion of Fund payments in the calculation of the retaliatory tax effectuates this intent.
Defendant asserts that the Fund primarily benefits workers’ compensation insurers rather than the general public. He concludes that Fund assessments are not in the nature of taxes and the like, but are, in effect, premiums paid by the insurance carriers to spread the risk of total disability resulting from prior injuries. Defendant therefore argues that Fund assessments are not within the class of burdens which the Legislature intended to compare in the computation of the retaliatory tax.
Defendant defines taxes as assessments made for the support of the government, citing Newark v. Joseph Hollander, Inc., 136 N.J.Eq. 539, 543, 42 A.2d 872 (Ch.Div.1945), aff’d per cur. 138 N.J.Eq. 112, 46 A.2d 786 (E. & A. 1946), and Woodward v. Philadelphia, 333 Pa. 80, 3 A.2d 167, 170 (Sup.Ct.1938). He contends that there is no general public benefit that results from the Fund, but only a benefit to plaintiffs and others who pay the assessment.
Defendant states that employees are not beneficiaries of the Fund, because they would be compensated, in any event, by employers or their workers’ compensation insurers, and that the effect of the Fund is to shift the burden of paying part of compensation payments from the employers’ carrier to the Fund. Bello v. Labor and Industry Comm’r, 106 N.J.Super. 405, 415, 256 A.2d 63 (App.Div.1969), rev’d on other grounds 56 N.J. 41, 264 A.2d 222 (1970). Defendant notes that the adverse parties in a Fund eligibility proceeding are the insurance carrier and the Fund, not the injured employee and the Fund. See Paul v. Baltimore Upholstering Co., supra 66 N.J. at 129, 328 A.2d 610.
*334 Defendant acknowledges that one of the purposes for which the Fund statute was enacted was to encourage the hiring of handicapped workers. See Lewicki v. N.J. Art Foundry, supra 88 N.J. at 83, 438 A.2d 544; Katz v. Howell Tp., 67 N.J. 51, 65, 335 A.2d 14 (1975); Paul v. Baltimore Upholstering Co., supra 66 N.J. at 129, 328 A.2d 610. Defendant argues, however, that this motive is now superfluous because the Law Against Discrimination, N.J.S.A. 10:5-1 et seq., prohibits discriminatory employment practices against the handicapped. See N.J.S.A. 10:5-4.1. In support of this proposition defendant cites Panettieri v. C.V. Hill Refrigeration, 159 N.J.Super. 472, 388 A.2d 630 (App.Div. 1978), in which the court noted:
Moreover, fear that reemployment of any heart attack victim, whatever the disabling extent of his cardiac condition, will increase the risk of recurrence and hence a work-connected death or disability with a concomitant insurance premium increase, is not a legitimate basis for his rejection as an employee, [at 492, 388 A.2d 630]
Defendant therefore concludes that Fund assessments are not in the nature of taxes since such assessments benefit only insurers such as plaintiffs, and therefore, should not be taken into account in computing retaliatory tax liability.
Defendant’s conclusion that the Fund no longer is relevant to the hiring of handicapped workers is based on a consideration of recent legal developments. This conclusion, however, ignores the other primary purpose with which the Fund was enacted: to protect employers who hire partially disabled workers from an unfair burden. See Lewicki v. N.J. Art Foundry, supra 88 N.J. at 83, 438 A.2d 544. In the absence of the Fund, employers, if self-insured, or their insurance carriers, would be required to compensate for total disability, even though such a disability was not entirely caused by the employer. See Combination Rubber Mfg. Co. v. Obser, supra. Since, however, as defendant concedes, an employer’s insurance premiums are a function of the amount of workers’ compensation claims which he is called upon to pay, plaintiffs presumably would receive premiums compensating them for the additional risk assumed. Thus, while the Fund serves to shift the risk of total disability from the insurers to the Fund, it is clear that without the Fund, insurers *335 would have been compensated by additional premium charges in any event. The Fund benefits employers, not insurance companies, by spreading the risk of compensation for total disability, thus keeping premium rates lower than they would otherwise be. Defendant’s argument that Fund assessments are not akin to a tax because they benefit only insurance carriers is unconvincing.
Plaintiff points to Harper v. N.J. Mfrs. Cas. Ins. Co., 26 N.J. Misc. 207, 58 A.2d 792 (Cty.Cir.Ct.1948), aff’d 1 N.J. 93, 62 A.2d 135 (1948), in which the lower court found Fund assessments to be in the nature of a tax. 26 N.J. Misc. at 212, 58 A.2d at 794. Defendant correctly notes, however, that upon review, our Supreme Court declined to characterize the assessment. 1 N.J. at 99-100, 62 A.2d 135. Defendant, in turn, cites a statement introduced with 1940 amendments to N.J.S.A. 34:15-95, which declared:
This Fund is created by the payment by the insurance companies and self-insurers of one per centum (1%) of the compensation for the preceding year, and is for the benefit of workmen injured in industry who are totally disabled, and is not made up of monies from taxation. [Emphasis supplied]
A fair reading of this statement makes it apparent that this reference was to general tax revenues or the general treasury and was not meant to label Fund assessments as “non-tax” payments. Also unpersuasive are attempts by defendant to define fees, fines, penalties, licenses and deposit requirements, and to exclude Fund assessments from these statutory categories of payments to be taken into account in computing the retaliatory tax.
What is important here is not how the Fund assessment is labelled. The primary consideration is the manner in which the Legislature intended that the retaliatory tax should work. Examination of the statute reveals that the Legislature sought to impose the same burden on an out-of-state insurer doing business here as is imposed on New Jersey insurers doing business in the home state of the out-of-state insurer. Equality or even-handed treatment is clearly the legislative purpose. See e.g. Western and Southern Life Ins. Co. v. State Bd. of Equaliza *336 tion of Calif., supra 451 U.S. at 668, 101 S.Ct. at 2083, 68 L.Ed.2d at 531; Pacific Mutual Life Ins. Co. v. Bushnell, 97 Ariz. 18, 396 P.2d 253 (Sup.Ct.1964); Occidental Life Ins. Co. v. Holmes, 107 Mont. 48, 80 P.2d 383 (Sup.Ct.1938); Annotation, supra. Massachusetts law provides for a second injury fund obligation. That it made no assessments during the period in question is not relevant, and defendant does not argue otherwise, since N.J.S.A. 17:32 — 15 requires only that the other state’s laws impose an obligation on New Jersey insurers. It may be concluded that this type of payment, if not specifically a tax, is sufficiently like a tax at least to fall within the statutory category of “other obligations” that the Legislature intended to be equalized.
Defendant asserts that, under the rule ejusdem generis, the words “or other obligations” do not expand upon the kinds of obligations set forth in the preceding specific enumeration. See Denbo v. Moorestown Tp., 23 N.J. 476, 482, 129 A.2d 710 (1957). Defendant, however, has not been convincing in its argument that Fund assessments are not akin to taxes. As plaintiffs have pointed out, the distinction appears to be more academic or philosophical than pragmatic. Defendant relies upon Commonwealth v. Fireman’s Fund Ins. Co., 369 Pa. 560, 87 A.2d 255 (Sup.Ct.1952), which held that payments made by a foreign insurance company to Philadelphia’s Fire Insurance Patrol could not be credited against the retaliatory tax. The court stated that the Patrol assessments were not “other obligations” within the meaning of the retaliatory tax statute, noting that fire insurance companies received a direct benefit from the Patrol, and that the Patrol was a private body whose collection and use of assets was not controlled by the Commonwealth. In the present case, New Jersey collects Fund assessments and controls the Fund. Unlike fire patrol payments under the Pennsylvania retaliatory tax, Fund assessments may properly fall within the category of “other obligations” as indicated by the legislative plan.
Defendant argues that the exclusion of Fund assessments does not undermine the retaliatory tax scheme. He notes that *337 payments made by plaintiffs on behalf of their employees to the New Jersey Unemployment Compensation Fund and to the New Jersey Disability Benefits Fund are not included in the computation of the retaliatory tax. Similarly, sales and use tax is not included. The statute by its terms does not permit ad valorem taxes on real or personal property to be taken into account. It is clear that the taxes and payments cited by defendant are applicable to all generally, not just to insurance companies. The retaliatory tax, however, is aimed at insurers only. Because Fund assessments are made only against insurance carriers (and the self-insured), it is the type of insurance-related burden that should be taken into account when computing retaliatory tax liability.
Finally, defendant contends that, while credits against the retaliatory tax for contributions required under the Unsatisfied Claim and Judgment Fund Law, N.J.S.A. 39:6-63, and the Motor Vehicle Security Responsibility Law, N.J.S.A. 39:6-59, are permitted, these are somehow distinguishable because these assessments are based on premiums paid, rather than on workers’ compensation claims paid. Defendant’s argument is primarily one of administrative convenience in light of a concededly difficult tax to administer. However, administrative convenience is not sufficient justification to exclude Fund assessments when measured against the design of the retaliatory tax statute.
Judgment will be entered by the Clerk of the Tax Court granting plaintiffs’ claims for refund.

The Fund was originally enacted by L. 1923, c. 81, and was referred to as the One Percent Fund, later the Two Percent Fund, because it was created by contributions equalling a statutorily mandated percentage of the total workers’ compensation paid each year. For a legislative history of the Fund, see Ratsch v. Holderman, 31 N.J. 458, 468-471, 158 A.2d 24 (1960).

American Employers’ Insurance Company did not file an amended return for these years because it made no payments to the Fund during 1975 and 1976.

American Employers’ made no payments to the Fund in 1977 and did not claim a credit for that year. Only American Employers’ and Commercial Union claimed Fund credits for 1978.