LASSER, P.J.T.C.
In this declaratory judgment action Mutual Assurance Company (Mutual) seeks a determination that sums deposited with it, in connection with its issuance of perpetual homeowners insurance policies to New Jersey residents, are neither premiums subject to the New Jersey Insurance Premiums Tax, N.J.S.A. 54:18A-1 et seq., nor assessments imposed pursuant to the New Jersey Insurance Underwriting Association Act (IUAA), N.J.S.A. 17:37A-1 et seq. (also known as the FAIR Plan, N.J.A.C. 11:1-5.1). The matter is before the court on cross-motions for summary judgment.

The Facts.

Mutual is a mutual fire insurance corporation organized in 1784 under the laws of the Commonwealth of Pennsylvania. It began to write perpetual fire insurance policies in 1801 and in 1975 introduced perpetual homeowners insurance policies. In 1983 Mutual was authorized to write perpetual homeowners insurance policies in New Jersey.
Perpetual insurance is purchased by deposit with Mutual of a sum of money, which is refundable to the insured upon cancellation of the policy. The policy remains in effect continuously unless cancelled. No annual premium or additional payment is required for the duration of the coverage, except for annual *58 adjustments requiring additional sums to be deposited to take into account increases in insurance costs or the value of the property insured. Refunds of part of the deposit are made when insurance costs or property values decrease. The policyholder is entitled to annual dividends in the same manner as the holder of a standard policy. If the policy is cancelled, the deposit is refunded in full to the insured. Mutual relies on the use of the deposit to provide sufficient funds to pay the cost of the risk, administrative cost and profit (insurance cost) to continue a policy in force forever.
Perpetual homeowners insurance as sold by Mutual involves the deposit of the required sum by each insured, who thereby becomes a member of the company.[1] The deposit is entered as a liability on Mutual’s balance sheet because it is refundable upon cancellation of the policy. The policy can be cancelled by the insured at any time but can be cancelled by Mutual only for reasons stated in the policy.
During 1983-1984, Mutual held discussions with the New Jersey Department of Insurance concerning Mutual’s liability for premiums tax on perpetual homeowners policies written in New Jersey. On November 8, 1984 the Attorney General of New Jersey issued to the Department of Insurance a letter opinion which concluded that each policyholder’s total deposit was subject to premiums tax and assessment. The Commissioner of the Department of Insurance, relying on the opinion of the Attorney General, ruled in a final agency decision letter that Mutual is liable for premiums tax and IUAA assessment on each policyholder’s total deposit.
Mutual contends that policyholder deposits are not premiums because (1) they are not the consideration for the policies since they are refundable, and (2) the amount of the policyholder’s total deposit does not reflect the annual cost of providing insurance. Mutual claims that it is the income generated by *59 the deposit which defrays the insurance cost. Mutual argues that if anything is to be identified as a premium, it is a portion of the investment income generated by the deposit, and that, therefore, the actual premium is beyond taxation by New Jersey because the State does not tax insurance company investment income.
The State contends that the deposits collected by Mutual on its perpetual insurance policies are “premiums” or “premium deposits.” It argues that the deposit is the only money paid by the policyholder to Mutual and therefore it must be the consideration for the entire term of the perpetual policy and, as such, is a “premium.” It states that there is no requirement in the statute that the payment be an annual payment. The State contends that the statute contemplates cash basis treatment of payments collected by insurance companies since the statute does not permit a deduction for the unused or unabsorbed portion of a premium until it is returned or credited to the insured. It argues that the tax is on the premium “collected,” not the premium “earned,” and therefore the deposit is taxable as a whole to Mutual upon receipt.
In the alternative, the State characterizes the deposit as a “premium deposit,” which it defines as a payment made at the inception of an insurance policy when the final premium cannot be determined until the end of the term. The State suggests that a procedure could be adopted whereby deposits previously taxed as premiums and then refunded could be offset against new deposits, resulting in an annual net deposit amount subject to tax.
Mutual argues, and the State agrees, that the annual investment income attributable to the deposit cannot be considered to be the premium. The reluctance of both the State and Mutual to consider the investment income produced by the policyholder deposit as taxable is based on the possibility that such interpretation might trigger retaliatory tax against investment income of New Jersey insurance companies writing policies in other states. A multistate network of retaliatory taxes exists to *60 protect domestic insurance companies from imposition by a sister state of taxes or other costs of doing business which exceed the tax in their own state. Employers’ Fire Ins. Co. v. Taxation Div. Director, 6 N.J.Tax 613, 615-616 (App.Div.1984), aff’g 5 N.J.Tax 326 (Tax Ct.1983). New Jersey is among the states which have enacted a retaliatory tax provision. N.J.S.A. 17:32-15. Concern was also expressed about the difficulty in determining the amount of investment income attributable to perpetual insurance written by Mutual in New Jersey.

Discussion.

I.

N.J.S.A. 54:18A-1 et seq. imposes a tax on every mutual insurance company organized under the laws of New Jersey or transacting business in New Jersey. The tax, on companies other than life insurance companies, is based on the amount of taxable premiums collected by the insurance company. Taxable premiums consist of:
all gross premiums, policy fees, premium deposits and assessments provided for by the respective policies or contracts and collected by the company, except reinsurance, less the amount of premiums, policy fees, premium deposits and assessments returned to the insured during the year on policies cancelled, except reinsurance, and less any so-called dividends or unused or unabsorbed portion of all premiums, policy fees, premium deposits or assessments returned or credited to policyholders 'during the year for which the tax is determined. [N.J.S.A. 54:18A-4],
The State contends that the policyholder’s deposit is either a premium or a premium deposit. Premiums and premium deposits are terms used in the insurance industry for funds collected by insurance companies from policyholders, and it is these payments by policyholders that are specifically identified by the Legislature as the basis for the tax.
A premium is “the agreed price for assuming and carrying the risk; that is, the consideration paid an insurer for undertaking to indemnify the insured against a specified peril.” Couch, Insurance 2d, § 30:1. See also 43 Am.Jur.2d, Insurance, § 826. A publication of the Insurance Accounting and Systems Association states, “An insurance premium represents the price *61 an insurance company charges for the insurance protection it sells, the various services it renders in connection with insurance, and the costs it incurs in doing both. Premiums comprise the insurance revenue of an insurance company, as contrasted with revenue from investments.” Ochsner, “Written Premiums,” in Strain, Property-Liability Insurance Accounting (3 ed. 1986) 136.
The term “premium deposit” refers to a prepayment by a policyholder of an estimated premium when the actual amount of the premium is not known. For instance, a workers’ compensation insurance payment is a deposit premium because the actual annual premium is determined at the end of the year after a payroll audit. Following the audit the excess deposit is refunded or an additional premium is required. See Van Wagoner v. United States, 368 F.2d 95 (5th Cir.1966); Champion Paper & Fibre Co. v. Glander, 82 N.E.2d 417, 419 (B.T.A. Ohio 1948).[2]
The entire deposit paid by a policyholder to Mutual cannot be considered a premium or premium deposit, as contended by the State, because it is not the price of the insurance. The deposit is used to generate investment income. The fact that the deposit is completely refunded upon cancellation of the policy by the policyholder, at any time, demonstrates that no part of the deposit is absorbed by Mutual to pay for the insurance.
However, Mutual’s perpetual policyholders are paying for their insurance coverage by forgoing the use of the deposit money for the period that the policy is in force. The cost of this forbearance by the policyholder is the consideration or *62 price paid by the policyholder for the insurance. Therefore, the cost of the use of the deposit money is the premium.[3] This cost can easily be determined at the inception or anniversary date of the policy by multiplying the amount of the deposit by the interest rate representing the cost of money. The Investment Division of the Department of the Treasury computes a daily rate, representing a return on the assets of its cash management fund. N.J.S.A. 52:18A-90.4; N.J.A.C. 17:16-31.1 et seq. This daily rate may be appropriate for application to perpetual policies at their inception and anniversary dates. An applicable interest rate is established under the Internal Revenue Code (I.R.C. § 1275(d)) which also may be appropriate. Another measure of the cost of money is United States treasury bill rates. An appropriate rate to determine the cost of the use of the deposit money can be established by the Commissioner of the Department of Insurance by regulation.
The Commissioner of the Department of Insurance is authorized to prescribe the form of the premiums tax return, N.J. S.A. 54:18A-1, and to audit and investigate the payment of premiums tax by an insurance company, N.J.S.A. 54:18A-1.3. In so doing, the Commissioner determines and regulates the manner in which the premiums tax is to be paid. It is therefore within the powers of the Commissioner to establish an appropriate method for calculating the premium, the cost of the use of the deposit money. See N.J. Guild of Hearing Aid Dispensers v. Long, 75 N.J. 544, 562, 384 A.2d 795 (1978), which states that the authority possessed by an administrative agency consists of powers expressly granted plus those which are reasonably necessary or appropriate to effectuate the specific delegation.
Insurance companies are taxed by New Jersey annually on the amount of premiums collected. N.J.S.A. 54:18A-2. This statute, by use of the words “the tax ... shall ... be 2% upon *63 the taxable premiums collected by such company during the year ending December 31 next preceding on all business of the company in this state” contemplates that premiums be reported and taxed annually on a cash basis. The premiums subject to tax are those premiums received during the year by the insurer, regardless of whether they are earned, less premiums returned to the policyholders. N.J.S.A. 54:18A-4. Perpetual policy premiums (the cost of the use of the deposit money) must also be taxed annually on a cash basis method. The cost of the use of the deposit money must therefore be computed and taxed as a premium at the inception of the policy when the insurer receives the policyholder’s deposit. Since each year marks a renewal of the policyholder’s forbearance of the deposit money, the insurer must be taxed annually on the cost of the use of the deposit money. The annual premium is therefore the amount paid by the policyholder measured by the cost of money at the date of the inception of the policy or its anniversary date.[4]
Plaintiff argues that a tax based on the policyholder’s deposit constitutes a tax on Mutual’s investment income, which may trigger retaliatory tax on the investment income of New Jersey insurance companies doing business in other states. Plaintiff contends that the threat of such retaliatory taxation of investment income provides sufficient justification for a finding that the premiums tax should not be imposed on perpetual insurance. Imposition of the premiums tax on the policyholder’s forbearance of use of the deposit money is not a tax on Mutual’s investment income. The activity taxed is the payment of the premium (the forbearance of the use of the money). No *64 tax is imposed on the investment income generated by the policyholder’s deposit or on any other investment income of Mutual, the amount of that income not being known at the inception or anniversary date of the policy.
The New Jersey premiums tax statute imposes a tax on payments made as consideration for insurance. As here applied to perpetual insurance, the premiums tax may result in the imposition of retaliatory taxes on New Jersey insurance companies selling perpetual insurance in other states. Most states, including New Jersey, administer a retaliatory tax in the following manner. The taxing state requires a foreign insurer to (1) compute its tax liability on its business within the taxing state and (2) compute a hypothetical tax on that business under the insurance tax laws applicable to foreign insurers in the insurer’s home state. If the amount of tax computed in the second step exceeds the tax computed in the first step, the foreign insurer is assessed the amount of the difference as a retaliatory tax. If the amount of the tax under the second step is less than or equal to the tax under the first step, no retaliatory tax is exacted. See Employers’ Fire Ins. Co., supra, 5 N.J.Tax at 331. Thus, other states having retaliatory tax statutes will take into consideration New Jersey’s tax on perpetual insurance premiums when taxing New Jersey insurers. New Jersey companies that do not sell perpetual insurance are unaffected. New Jersey companies that do sell perpetual insurance will be taxed by New Jersey on the cost of the use of the deposit money as a premium, and to the extent that New Jersey companies engage in this business in other states and a retaliatory tax is triggered, a similar tax may be imposed by other states on these insurers. This retaliatory tax is within the contemplation of the New Jersey' Legislature because New Jersey has adopted the general insurance company taxation scheme of a tax on premiums coupled with a retaliatory tax.

II.

The New Jersey Insurance Underwriting Association was created to provide fire and extended coverage insurance to *65 property owners in urban areas where private insurance coverage was unavailable. N.J.S.A. 17:37A-1. All property insurers authorized to write policies in New Jersey are required to be members of the association. N.J.S.A. 17:37A-3. All members of the association are required to “participate in its writings, expenses, profits and losses in the proportion that the net direct premiums of each such member ... written in this State ... bear to the aggregate net direct premiums written in this State by all members of the association____” N.J.S.A. 17:37A-6. Net direct premiums are defined as:
[Gjross direct premiums (excluding reinsurance assumed and ceded) written on property in this State for fire and extended coverage insurance, including the fire and extended coverage components of homeowners and commercial multiple peril package policies, as computed by the commissioner, less return premiums upon cancelled contracts, dividends paid or credited to policyholders or the unused or unabsorbed portions of premium deposits. [N.J.S.A. 17:37A-2(g)]
This statute also uses premiums as the basis for assessment, and should be applied consistently with N.J.S.A. 54:18A-1 et seq. Mutual, in its brief, states, “The actual language of the statute tracks, if not the precise words, the philosophy of the premiums tax statute.”
I therefore conclude that neither N.J.S.A. 54:18A-1 et seq. nor N.J.S.A. 17:37A-1 et seq. imposes a tax on perpetual insurance policyholder deposits but both do impose a tax on the “cost of the use of money” premiums. It is appropriate that the Commissioner of the Department of Insurance provide, by regulation, the manner in which the cost of the use of the deposit money is to be calculated to determine the amount of annual premium at the inception or anniversary date of a perpetual homeowners insurance policy.
The Clerk of the Tax Court is directed to enter judgment denying plaintiffs motion for summary judgment and granting defendant’s motion for summary judgment, but the judgment is limited to a determination that the annual cost of the use of the deposit money is the perpetual insurance premium subject to tax by the State of New Jersey.

The amount of the deposit is approximately 20 times the standard premium for a one-year policy.

 N.J.S.A. 54:18A-4 et seq. also makes reference to policy fees and assessments. The Director does not contend that the perpetual homeowners insurance deposit is either a policy fee or an assessment. Policy fees include payments made by an insurance applicant for the right to apply for the insurance, which fees are not returned if the application is rejected, Couch, supra, § 30:73, and an assessment is a sum levied by mutual or fraternal benefit companies which is substantially the equivalent of a premium. Couch, supra, § 30:70.

In its brief, Mutual concedes that “Under such an approach [Mutual's perpetual insurance plan], the actual consideration that is provided for the coverage is the use of the deposit funds, less the dividends that are received by the policyholder."

Annual adjustments in premiums collected can be made for perpetual insurance in the same manner as standard insurance where required by (1) cancellation of the perpetual policy, (2) increase or decrease in the amount of the deposit, or (3) a dividend paid to the perpetual policyholder. These adjustments can be accomplished by treating return of the deposit on the cancellation of the policy, the decrease of the deposit, or the payment or credit of a dividend as a returned premium calculated on the basis of the cost of the use of the deposit money returned pursuant to N.J.S.A. 54:18A-4 and the increase in deposit as an additional premium based on the cost of the use of the money added.